**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Mamady Kalifa Keita,

            Plaintiff,

v.

Kathryn Halverson,[1] *Warden of Facility (MCF-OPH) In their individual capacities*; Travis Binkley, *Facility Lieutenant In their individual capacities*; and Lisa Conners, *Associate Warden (during incident) In their individual capacities*,

            Defendants.

Case No. 25-cv-02352 (JMB/ECW)

**REPORT AND RECOMMENDATION**

---

This action comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 17). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Motion to Dismiss should be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2025, Plaintiff Mamady Kalifa Keita, an inmate at Minnesota Correctional Facility-Oak Park Heights ("MCF-OPH") for all times relevant to the

---

[1]     Defendant Kathryn Halverson's last name is correctly spelled "Halvorson" and Defendant Lisa Conners' last name is correctly spelled "Connors." (Dkt. 19 at 1 n.1.) The Court uses the spelling from the caption in this Report and Recommendation.

allegations in this action, filed the initial Complaint in this action. (Dkt. 1.) The Complaint generally asserted three counts against ten Defendants, each arising from separate incidents at MCF-OPH in 2024. (*See id.* at 4, 7-11.)[2] On August 11, 2025, the Court, pursuant to Rule 20(a) of the Federal Rules of Civil Procedure, ordered Keita to choose one of the counts to assert in an amended complaint. (Dkt. 9 at 3-4.)

On September 24, 2025, Keita filed the operative Amended Complaint asserting an Eighth Amendment claim, through the Fourteenth Amendment, against Defendants Travis Binkley, Facility Lieutenant at MCF-OPH ("Binkley"); Lisa Conners, Associate Warden of MCF-OPH ("Associate Warden Conners"); and Kathryn Halverson, Warden of MCF-OPH ("Warden Halverson"). (Dkt. 12 at 2-3.) The claims against these Defendants are asserted in their individual capacities. (*Id.*)

The Amended Complaint alleges in relevant part as follows:

On August 5, 2024, Keita "was refusing to remove his hand from the book path, (refusing direct orders)," when Binkley ordered his subordinates to tie Keita in "the W.R.A.P.," a pinion restraint device. (*Id.* at 4-5.) Pursuant to prison policy, Keita was supposed to be allowed toilet breaks every 30 minutes, upon request, and was supposed to be released from the restraint after two hours. (*Id.*) Binkley denied Keita's right to use the bathroom and refused to remove him from the restraint for 4-5 hours, where both the denial and the refusal were against Minnesota Department of Corrections ("MDOC")

---

[2]    Unless stated otherwise, references to page numbers in this Report and Recommendation refer to the CM/ECF pagination.

policy. (*Id.* at 4-5, 7.) However, in a grievance attached to the original Complaint, Keita asserted that he was in the restraint for 2 to 3 hours. (Dkt. 1-2 at 39-41.) Keita alleges the denial and refusal amounted to torture, causing Keita to urinate on himself, a loss of feeling in his legs, back pain, neck and spine pain, and nightmares. (Dkt. 12 at 4-5.) Associate Warden Conners and Warden Halverson showed deliberate indifference to his torture by denying his grievance against Binkley for his actions. (*Id.* at 7.)

In his request for relief, Keita seeks declaratory relief that Defendants violated his rights and a statement of Defendants' obligations as to those rights; injunctive relief, including commanding that Defendants provide him with medical care; and monetary damages. (*Id.* at 5.)

On December 1, 2025, Defendants filed their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 17.) As part of their Motion to Dismiss, Defendants argue that the Amended Complaint should be dismissed as to Associate Warden Conners and Warden Halverson because it fails to plausibly allege their personal involvement in the restraint of Keita and because the respondeat superior doctrine does not apply to section 1983 claims. (Dkt. 19 at 5-6.) Further, Defendants argue that Keita failed to plead facts that would support finding Binkley had the requisite malicious and sadistic intent for an Eighth Amendment violation, and even if Keita pleaded sufficient facts to support his constitutional claims, his claims should be dismissed because Defendants are entitled to qualified immunity. (*Id.* at 6-12.) In addition, Defendants assert that Plaintiff's request for declaratory or injunctive relief should be dismissed because he has sued Defendants in their individual capacities, and

because such claims are moot given his release from MDOC custody on October 28, 2025.  (*Id.* at 12-13.)

On December 3, 2025, this Court issued a Briefing Order giving Keita until January 15, 2026 to file a responsive brief.  (Dkt. 23.)  The Briefing Order was sent to the address that Keita provided the Court as part of his Notice of Change of Address.  (*See* Dkt. 24.)  Keita did not file a responsive brief on the deadline, and on January 28, 2026, Defendants filed a letter stating they would not be filing a reply brief because Keita had not responded to the Motion to Dismiss.  (Dkt. 25.)  As of the date of this Report and Recommendation, Keita still has not filed a responsive brief.

## II.    LEGAL STANDARD

As set forth above, Defendants bring the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 17.)  Motions to dismiss under Rule 12(b)(6) assert that a plaintiff's pleadings "fail[] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Certain safeguards apply to a Rule 12(b)(6) motion.  First, when considering a Rule 12(b)(6) motion, a court construes pleadings in the light most favorable to the nonmoving party, and the court must take a pleading's factual allegations to be true.  *See*, *e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).  Second, a court must afford the nonmoving party all reasonable inferences from a pleading's allegations.  *See, e.g., Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009)).

Notwithstanding these points, to withstand a Rule 12(b)(6) motion, litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation modified). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

As a result, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint 'to state a claim to relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Following *Twombly* (and consistent with *Iqbal*), the Eighth Circuit has provided further guidance on Rule 8's pleading standard:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, [550 U.S. at 555], or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, [93] (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, [550 U.S. at 555 n.3]. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako* [*v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004)], and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). "Though matters 'outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). This can include prison grievance forms attached as part of a complaint.[3] *See Birdo v. Hutchison*, No. 20-CV-1925 (MJD/ECW), 2021 WL

---

3    In its August 11, 2025 Order, the Court ordered that Keita need not refile the exhibits to his Complaint as part of his Amended Complaint. (Dkt. 9 at 4.) As such, the Court considers the pertinent exhibits as part of the Amended Complaint.

3743521, at *4 (D. Minn. July 28, 2021) ("The August 15 grievance is an exhibit attached to the complaint whose authenticity is unquestioned and may be considered on a motion to dismiss under Rule 12(b)(6)." (citation modified)), *R. & R. adopted sub nom.*, 2021 WL 3741484 (D. Minn. Aug. 24, 2021).

### III.    ANALYSIS

#### A.    Claims Against Associate Warden Conners and Warden Halverson

As stated previously, Defendants argue that the claims against Associate Warden Conners and Warden Halverson should be dismissed because the Amended Complaint fails to plausibly allege their personal involvement in the restraint of Keita and because the respondeat superior doctrine does not apply to section 1983 claims.  (Dkt. 19 at 5-6.) Indeed, while Keita identifies Associate Warden Conners and Warden Halverson as Defendants, the Complaint does not include any factual matter describing what each of these Defendants did (or failed to do) that allegedly violated his constitutional rights, including under the Eighth Amendment, with respect to the actual act of placing him in the restraint that resulted in his alleged injuries on August 5, 2024.  *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (noting that plaintiff pursuing claims under § 1983 must "allege facts supporting any individual defendant's personal involvement or responsibility for the violations").  Accordingly, Keita's individual capacity claims against these Defendants should be dismissed with respect to any action taken against him on August 5, 2024, as alleged in the Amended Complaint.

To the extent that Keita endeavors to attach personal liability to Associate Warden Conners and Warden Halverson because of their roles as the Associate Warden and

Warden of MCF-Stillwater, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (citing *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)); *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct."). Rather a supervisor may be liable under § 1983 if she "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [plaintiff]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (citation modified) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).  Deliberate indifference or tacit authorization requires a showing that the supervisor had notice that training procedures and supervision were inadequate and likely to result in a constitutional violation and a causal link to the deprivation of rights.  *See* S*tevenson v. Doe*, No. 20CV02007SRNTNL, 2021 WL 931186, at *6 (D. Minn. Mar. 11, 2021) (citation omitted).

Keita does assert in the Amended Complaint that his claims against Associate Warden Conners and Warden Halverson are claims for deliberate indifference based on the rejection of the grievance he filed relating to the August 5, 2024 incident.  (Dkt. 12 at 7.)  However, such allegations fail to state a viable claim for relief because Keita does not allege any facts supporting any of the necessary elements for a deliberate indifference claim against those Defendants as supervisors.  For example, Keita did not allege any facts supporting a conclusion that Associate Warden Conners and Warden Halverson's

subordinates engaged in a pattern of unconstitutional acts (much less that those Defendants had notice of such a pattern) or supporting a conclusion that lack of training procedures and supervision caused Binkley to place Keita in the restraint on August 5, 2024. The rejection of his grievance *after* the events of August 5, 2024 plainly cannot show that Associate Warden Conners and Warden Halverson caused Binkley to place and keep Keita in the restraint on August 5, 2024. Further, Keita did not allege any injury resulting from the rejected grievance that forms the basis of his claims against Associate Warden Conners and Warden Halverson.

For all of these reasons, the Motion to Dismiss should be granted without prejudice as to Associate Warden Conners and Warden Halverson.

**B.    Claim Against Defendant Binkley**

As noted previously, Defendants argue that Keita failed to plead facts that would support a finding that Binkley had the requisite malicious and sadistic intent for an Eighth Amendment violation, and even if Keita pleaded sufficient facts to support his constitutional claim, his claim should be dismissed because Binkley is entitled to qualified immunity. (Dkt. 19 at 6-12.) Given that a qualified immunity analysis addresses both of these arguments, the Court proceeds with this analysis with respect to Keita's Eighth Amendment claim against Binkley.

"The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (citation modified);

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citation modified)).  "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'"  *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)).  The pleading standard under *Iqbal* and *Twombly* (*see supra* Section II) applies.  *Wood*, 572 U.S. at 757-58.  Courts may consider the two questions in either order.  *Pearson v. Callahan*, 555 U.S. 223, 241 (2009).  A section 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes.  *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

The U.S. Supreme Court has defined the "clearly established" requirement for the purposes of qualified immunity as follows:

> Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate.  This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

> The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). This defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). The relevant question for the application of qualified immunity is whether there are any cases "where an officer acting under similar circumstances as [the defendant] was held to have violated the [Constitution]." *White v. Pauly*, 580 U.S. 73, 79, (2017). Here, the Court concludes that Keita's allegations do not preclude application of qualified immunity because Keita does not identify any controlling authority or show a robust consensus of cases of persuasive authority that would clearly prohibit Binkley's conduct under the particular circumstances of this case.

Under Supreme Court precedent regarding prisoners, the Eighth Amendment forbids unnecessary and wanton infliction of pain. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[A] prison official violates the Eighth Amendment only when two requirements are met": (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation modified). With respect to the

11

first requirement, the Eighth Circuit has concluded a failure to remove restraints from a

prisoner can constitute excessive force in violation of the Eighth Amendment. *See Evans*

*v. Smith*, 153 F.4th 613, 620-21 (8th Cir. 2025) (finding excessive force where there was

no penological need to keep the plaintiff in leg restraints for fifteen hours while he was

secure in his one-man cell). As to the second requirement, the Eighth Circuit has

explained:

> "[W]henever prison officials stand accused of using excessive physical force
> in violation of the Cruel and Unusual Punishment Clause, the core judicial
> inquiry is that set out in *Whitley*: whether force was applied in a good-faith
> effort to maintain or restore discipline, or maliciously and sadistically to
> cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117
> L.Ed.2d 156 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175,
> 175 L.Ed.2d 995 (2010). This inquiry turns on "such factors as the need for
> the application of force, the relationship between the need and the amount of
> force that was used, and the extent of injury inflicted," from which
> "inferences may be drawn as to whether the use of force could plausibly have
> been thought necessary, or instead evinced such wantonness with respect to
> the unjustified infliction of harm as is tantamount to a knowing willingness
> that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078. The word
> "sadistically" is not surplusage; "'maliciously' and 'sadistically' have
> different meanings, and the two together establish a higher level of intent
> than would either alone." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir.
> 1994).

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Evans*, 153 F.4th at 619

("When an inmate brings an excessive force claim against prison officials, the core

judicial inquiry is whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." (citation modified)).

There are no allegations in the Amended Complaint that Binkley restrained Keita

maliciously and sadistically to cause harm outside of the length of time he was restrained

and that Keita was not allowed to use the toilet. Keita admits in his Amended Complaint

12

that he was "refusing to remove his hand from the book path, (refusing direct orders),"

when Binkley ordered his subordinates to tie Keita in the restraint device.  (Dkt. 12 at 5.)

Further, the grievances attached by Keita to his original Complaint show that Keita had

actually been placed in the restraint multiple times on August 5, 2024 due to "negative

behavior," and that each time he was removed from the restraint to be placed in a cell, he

started to resist staff, resulting in staff again placing Keita in the restraint:

> I have reviewed your grievance regarding the Use of Force by Lt. Binkley. **You were placed in the WRAP multiple times during 3rd watch on 8/5/24 due to your negative behavior. Every time you were removed from the WRAP and placed into a cell, you would start to resist staff by not placing your hands and arms inside the cell**. Due to your negative behavior, you were placed back into the WRAP multiple times. With your continued negative behavior and the fact that you resisted staff on multiple occasions after being removed from the WRAP, it was determined that it may not have been safe for you or the staff for you to be removed from the WRAP at that particular time.

(Dkt. 1-2 at 35 (emphasis added).)

The Amended Complaint does not dispute this description of the events of August

5, 2024.  Moreover, while Keita alleges in the Amended Complaint that Binkley denied

his right to use the bathroom and kept him in the restraint for 4-5 hours, notwithstanding

a 2-hour minimum set forth in MDOC policy, Keita's contemporaneous grievances state

that he was restrained for less than 4 hours, namely "2 Hours," "over 3 hours," and "over

three hours."[4]  (Dkt. 1-2 at 35-36, 39, 40-41.)  Further, even assuming it is true that

---

[4]    "When a complaint's allegations conflict with the attached exhibits, the facts in the exhibits typically control." *Stadther v. Dep't of Homeland Sec.*, No. CIV. 11-1297 DWF/JJG, 2012 WL 4372570, at *3 (D. Minn. Aug. 7, 2012), *R. & R. adopted*, 2012 WL 4372567 (D. Minn. Sept. 25, 2012) (citing *Massey v. Merrill Lynch & Co., Inc.,* 464 F.3d 642, 645 (7th Cir.2006)); *see also U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F.

MDOC policy prohibits keeping a prisoner in the restraint at issue for more than 2 hours, under Eighth Circuit law, violations of prison policy alone are not enough to establish Eighth Amendment violation.  *See Johnson v. Schurman*, 145 F.4th 897, 905 (8th Cir. 2025).

Keita cites no case, nor could the Court locate any case, finding that a prison's use of a restraint in similar circumstances was unconstitutional.  *See White*, 580 U.S. at 79. "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."  *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016).  Here, being restrained for 2-3 hours after Keita's repeated failures to comply with orders despite being placed in the restraint and released was not totally without penological justification.  *See Jackson*, 866 F.3d at 977 (reversing the denial of qualified immunity after determining that restraining an inmate on a restraint board for up to four hours constituted the use of force but concluding that this is "not a case where a complete absence of penological purpose raised the reasonable inference that [the correctional officer] acted maliciously in an effort to cause harm" (citation modified)).  The Court therefore recommends dismissal of the individual capacity claims against Binkley on qualified immunity grounds.

---

Supp. 2d 593, 596 (E.D. Va. 2004) ("In the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails.") (citing *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

14

## C.      Injunctive Relief and Declaratory Relief

Defendants argue that Keita's request for injunctive and declaratory relief fail because he has not sued them in their official capacity, and because Keita is no longer an inmate at MFC-OPH making his request for injunctive and declaratory relief moot. (Dkt. 19 at 12-13.)

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). "Article III mootness divests the Court of subject matter jurisdiction."[5] *Ahmed v. Sessions*, Case No. 16-cv-02124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017). A court may consider matters outside the pleadings in a factual attack on subject matter jurisdiction when deciding whether a live controversy exists. *See Davis v. Anthony, Inc.*, 886 F.3d 674, 677, 679 (8th Cir. 2018). The Eighth Circuit has held that "[p]laintiffs seeking prospective relief based on past actions must show 'a real and immediate threat that they would again suffer similar injury in the future.'" *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020)) (citation modified) (quoting *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005)). Declaratory relief can also be a form of prospective relief. *See Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010).

---

[5]      Federal Rule of Civil Procedure 12(b)(1) and not 12(b)(6), as relied upon by Defendants, governs a lack of subject matter jurisdiction based on mootness. *See Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018).

Even assuming that Keita had adequately asserted official capacity claims against Defendants (*see S.A.A. v. Geisler*, 127 F.4th 1133, 1136-40 (8th Cir. 2025)), there is no dispute that Keita is no longer at MCF-OPH (Dkt. 24), and thus no longer subject to the alleged conduct by Defendants.  As such, the Court finds that the request for declaratory relief or any request for injunctive relief is moot[6] and any such request for relief or judgment should be denied without prejudice.[7]  *See Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006) (holding that a prisoner's claims for injunctive and declaratory relief related to the conditions of his imprisonment while in isolation were moot after the prisoner's period of isolation ended); *see also Reichling v. Best*, No. 22-2366, 2022 WL 12165683, at *1 (8th Cir. Oct. 21, 2022) ("Because, as Reichling concedes in his pro se brief, his transfer to another prison during the pendency of his action mooted his request for injunctive relief, we lack jurisdiction."); *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) ("We agree with the district court that Hanks's requests for injunctive relief are moot because he is no longer incarcerated at the Jail . . . ."); *Smith v. Boyd*, 945 F.2d

---

[6] The Court notes that none of the exceptions to the mootness doctrine apply here. *See Ahmed*, 2017 WL 3267738, at *2-3 (listing four exceptions to the mootness doctrine, including that (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.); *see also Ireland v. Anderson*, No. 3:13-CV-3, 2016 WL 7324102, at *2 (D.N.D. July 5, 2016).

[7] Because the Court recommends dismissal of this case based on a lack of subject matter jurisdiction, the Court recommends that the claim be dismissed without prejudice. *See Jenkins v. Bowker*, No. 19-cv-1051 (NEB/LIB), 2019 WL 2931581, at *2 (D. Minn. June 4, 2019), *R. & R. adopted*, 2019 WL 2921796 (D. Minn. July 8, 2019); *see also Romero v. Pinnacle Equities, LLC*, 283 F. App'x 429, 431 (8th Cir. 2008) (modifying dismissal for lack of subject matter jurisdiction to be without prejudice).

1041, 1043 (8th Cir. 1991) ("[A]s the district court correctly concluded, Smith's release from the jail rendered his request for injunctive relief moot."); *c.f.*, *Just. Network, Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019) (a request for declaratory relief must seek "prospective" relief, not "retrospective" relief as to the legality of past acts).

Accordingly, the Court recommends that Keita's request for injunctive and declaratory relief as to Defendants be denied as moot.

## IV.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that: Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 17) be **GRANTED** and that the Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.

DATED: April 10, 2026

*s/ Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## NOTICE

The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).